IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN F. EULICH, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 3:99-CV-1842-L |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Petitioner's Motion to Abate Fine and Declaration Purging Petitioner of Contempt[1] ("Motion to Abate and Purge"), filed November 5, 2004. On August 23, 2005, the court held a hearing on Petitioner's Motion to Abate and Purge. Having considered the motion, response, reply, and evidence submitted therewith, along with all admissible evidence presented at the August 23, 2005 hearing, witness testimony, arguments of counsel, and the supplemental post-hearing briefs filed by the parties[2], as well as the record and applicable authority, the court **denies in part and grants in part** Petitioner's Motion to Abate and Purge.

### I.     Factual and Procedural Background

The Internal Revenue Service ("IRS") is investigating Petitioner John F. Eulich ("Eulich" or "Petitioner") for the tax years of 1995, 1995 and 1997. As part of its investigation, the IRS sought documents relating to a Bahamian trust, the Mona Elizabeth Mallion Settlement Trust No.

---

[1]The proper title to Petitioner's motion should be "Petitioner's Motion to Abate Fine and for Declaration Purging Petitioner of Contempt."

[2]At the close of the August 23, 2005 hearing, the parties opted to file supplemental briefing in lieu of making closing arguments. On September 16, 2005, Respondent filed United States' Supplemental Briefing on Petitioner's Motion to Abate Fine, and Eulich filed Petitioner's Closing Brief Regarding Petitioner's Motion to Abate Fine and for Declaration Purging Petitioner of Contempt.

**Memorandum Opinion and Order – Page 1**

16 ("the Trust"), and to various corporations controlled by the Trust. To that end, on May 18, 1999 and November 15, 1999, the IRS issued Formal Document Requests ("FDRs") on Eulich and Virginia Eulich, his wife, and on or about July 15, 1999, served an Administrative Summons on the Eulichs.

On August 16, 1999, Eulich and his wife filed this action to quash certain document requests relating to the Trust, and the Government subsequently filed counterclaims seeking to enforce the summonses. On February 9, 2001, the magistrate judge filed a report and recommendation, after having held a hearing, recommending that the summonses be enforced against both Eulich and his wife. On September 17, 2002, this court accepted the magistrate judge's recommendation and enforced the summonses and FDRs ("the enforcement order").[3]

On June 27, 2003, the Government filed a Motion to Hold Petitioner in Contempt of the Court's September 17, 2002 enforcement order. The court referred the motion to the magistrate judge, who held a hearing on March 12, 2004. At the hearing, the magistrate judge heard testimony from James S. Vivian, IRS international examiner; Eulich; Bruce Zagaris, an attorney; and Keith Kennedy, an attorney. On April 26, 2004, the magistrate judge issued his report and recommendation ("Magistrate's Report"), recommending that the court hold Eulich in civil contempt of court:

---

[3]The Eulichs appealed, and on August 27, 2003, the Fifth Circuit Court of Appeals affirmed the enforcement order as to Eulich and reversed the enforcement order as to his wife. Specifically, the Fifth Circuit held that Virginia Eulich did not have custody or control of the requested documents, as she was named in the FDRs and summonses only because she was married to Eulich and because community property was used in establishing the Trust. Accordingly, based on the Fifth Circuit's opinion, Virginia Eulich is no longer a party to this action, as she has no obligation or responsibilities associated with the FDRs and summonses. The Fifth Circuit, however, refused to "disturb the finding that John Eulich has control of the [requested] documents." *Eulich v. United States*, 2003 WL 22018884 at *1 (5th Cir. 2003).

**Memorandum Opinion and Order – Page 2**

> The evidence presented established by clear and convincing evidence that John Eulich has failed to comply with the court's enforcement order in failing to produce the documents called for in the IRS summons and requests which are in the physical possession of the trustee of the Mona Elizabeth Mallion Trust Fund No. 16, the Canadian Imperial Bank of Commerce Trust Co., (Bahamas) Ltd. And for the reasons stated above John Eulich has failed to demonstrate that he has made all reasonable efforts to comply with the court's order.

Magistrate's Report at 10.[4]  Both parties filed objections to the Magistrate's Report.

By order issued August 18, 2004, the court accepted in part and rejected in part the Magistrate's Report. The court accepted that portion of the Magistrate's Report recommending that Eulich be held in civil contempt of court. The court rejected the remaining portions of the Magistrate's Report, including his recommendations as to the amount of the fine and the tolling of the fine pending the filing of a lawsuit in the Bahamas. Instead, in order to obtain compliance with the enforcement order, the court imposed a per diem civil fine in the amount of $5,000 per day for the first 30 days from the entry date of its order, until Eulich "produces, or causes to be produced, the documents of the Mallion Trust Fund No. 16 to IRS representative(s), or the court orders otherwise." Order of Contempt at 6. The court further ordered that if Eulich had not complied by the 31st day, the fine would be increased to $10,000 per day, and that if by the 45th day after entry of its order, Eulich had not complied with the enforcement order, the attorney for the Government shall notify the court of his noncompliance. *Id.* at 12. The court ruled that if it received such notice,

---

[4]The magistrate judge also recommended that the court impose a civil fine in the amount of $1,500 per day from the date of his order until Eulich produces to representative(s) of the IRS the documents of the Trust or causes the same to be made available to such representative(s). Magistrate's Report at 10-11. Finally, the magistrate judge recommended that in the event Eulich files an action or causes to be filed an action by persons or entities with colorable standing to seek disclosure of records maintained by the Canadian Imperial Bank of Commerce and Trust Co. (Bahamas) Ltd. in a court of the Bahamas, that the civil fine imposed be tolled during the period that such action is pending, provided that certified copies of all process, pleadings, written and minute orders of the Bahamian court are promptly provided to this court. *Id.*

**Memorandum Opinion and Order – Page 3**

it would set the matter for a hearing to determine whether Eulich was in compliance and, if he was not, whether the daily fine should be increased or whether Eulich should be incarcerated to obtain compliance with the enforcement order. *Id.*

Following an inquiry by the court concerning whether the parties could reach an agreement regarding tolling certain provisions of the court's August 18, 2004 Order of Contempt, the parties filed a Joint Response to the Court's Inquiry and Request for Modification of the [August 18, 2004] Order ("Joint Response"), in which the parties jointly requested that the court enter an order providing:

> 1. That if Mr. Eulich delivers the documents as represented by his counsel on or before October 1, 2004, then the actual payment of any fine is suspended pending a status report by the Parties to be filed on or before October 8, 2004.
>
> \* \* \*
>
> 3. That in the event Mr. Eulich fails to deliver the documents which he received from CIBC and Mr. Rounce by October 1, 2004 . . . Mr. Eulich is ordered to post a bond or deposit cash in the registry of the Court in the amount of $150,000 by 5:00 on October 4, 2004, pending further order of the Court.
>
> 4. The actual payment of any other fine is suspended pending further Order of the Court.

Joint Response at 2. The United States expressly stated in the Joint Response that, by filing the Joint Response, it did "not agree to waive the accrual of any fine." *Id.* at 1. Following receipt and review of the Joint Response, the court issued an order, essentially adopting the agreed-upon terms of the Joint Response, in which the court ordered:

> 1. That if Mr. Eulich delivers the documents as represented by his counsel on or before October 1, 2004, then the actual payment of any fine is suspended pending a status report by the Parties to be filed on or before October 8, 2004;

Case 3:99-cv-01842-L   Document 122   Filed 01/23/06   Page 5 of 16   PageID 644

\* \* \*

>   3.    That in the event Mr. Eulich fails to deliver the documents which he received from CIBC and Mr. Rounce by October 1, 2004 . . . Mr. Eulich is ordered to post a bond or deposit cash in the registry of the Court in the amount of $150,000 by 5:00 p.m. on October 4, 2004, pending further order of the Court; and
>
>   4.    The actual payment of any other fine is suspended pending further Order of the Court.

Order at 1. In the October 8, 2004 Joint Status Report, the parties stated that a hearing would be necessary to resolve the amount, if any, of the fine accrued against Eulich, including whether the fine should be abated, and whether the production to date had expunged Eulich from further contempt. Joint Status Report ¶ 11. On November 5, 2004, Petitioner filed Petitioner's Motion to Abate and Purge. On August 23, 2005, the court held a hearing on the motion.

At the hearing, Eulich testified regarding his actions following the court's Order of Contempt, and detailed his efforts to comply with the Order of Contempt and to obtain the CIBC documents. *See generally* Hearing Transcript at 56-63 (direct examination) and 84 (redirect examination). These efforts included, without limitation: traveling to the Bahamas to meet with CIBC on or about September 7, 2004 after being delayed five or six days due to hurricanes; obtaining a legal opinion from a firm of CIBC's choosing that CIBC could legally produce the documents, notwithstanding Bahamian legal restraints on CIBC and CIBC's reluctance; putting up $500,000 in securities to reimburse CIBC in the event it were sued in connection with producing the documents; convincing CIBC to allow David J. Rounce (the one-man Advisory Committee of the Trust) to copy CIBC's documents; indemnifying Rounce against future claims resulting from the disclosure of the documents; and obtaining Rounce's authorization to release the documents to Eulich's attorneys. *See id.*

The court also heard the testimony of Scott Tye (owner of Tye International, an international document scanning company). Mr. Tye testified that, with Rounce's authorization, he scanned each page that CIBC provided to him. *See id.* at 33. He also testified that he saw nothing that would suggest to him that CIBC's production was not complete. *Id.* at 38. Tye testifies he provided a copy of every scanned image on his laptop hard drive to Ms. Jessica Ellis at the Meadows, Owens law firm. *Id.* at 33-36. A review of the evidence submitted by the United States shows that on September 30, 2004, Meadows, Owens produced four boxes of CIBC documents (totaling 9,501 pages) to the United States. *See* Gov't Ex. 300.[5]

## II.   Analysis

### A.   Legal Standard

A movant seeking a civil contempt order must establish, by clear and convincing evidence, "(1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002); *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987) (citations omitted); *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976). Willfulness is not an element of civil contempt. *Petroleos Mexicanos*, 826 F.2d at 401. Once the movant has shown a prima facie case, the respondent can defend against it by showing a present inability to comply with the subpoena or order. *Id; United States v. Rylander,* 460 U.S. 752, 757 (1983). "While the court is bound by the enforcement order, it will not be blind to evidence that compliance is factually impossible. Where compliance is impossible,

---

[5]Exhibit 300 also shows that the production included a privilege log pertaining to five documents. Following the August 23, 2005 hearing, during a telephone conference with counsel for all parties present, counsel for the United States, Mr. Joe Pitzinger, informed the court's law clerk that he did not challenge the assertion of privilege as to those five documents in the September 30, 2004 production of documents Bates-labeled CIBC0001-CIBC9501.

**Memorandum Opinion and Order – Page 6**

neither the moving party nor the court has any reason to proceed with the civil contempt action." *Rylander*, 460 U.S. at 757. "It is settled, however, that in raising this defense, the defendant has a burden of production." *Id*.

"[A] party under court order to produce documents has 'a duty to make in good faith all reasonable efforts to comply.'" *United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984) (quoting *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976)) (in turn quoting *United States v. Ryan*, 402 U.S. 530, 534 (1971)). "[A] contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828 (1994). At the purgation stage, a court finding that a contemnor has not purged himself of contempt amounts to a second contempt finding. *See United States v. Brumfield*, 188 F.3d 303, 306-07 (5th Cir. 1999).

**B.     Motion to Abate Fine**

Petitioner argues that the court should abate any fine, as he produced the CIBC documents to the government in a timely manner. *See* Pet. Closing Brief at 6-8; Pet. Mot. at 6; Pet. Reply at 11-13. In support of his position, Petitioner states that the court's September 14, 2004 order "essentially sets a compliance deadline for Mr. Eulich of October 1, 2004." *See* Pet. Closing Brief at 7. In opposition, the United States contends that Eulich should be ordered to pay the fine due as of September 30, 2004, even if the court finds he has complied with the order of contempt, and otherwise be ordered to pay the fine as of the date of the hearing. *See* Gov't Closing Brief at 8; United States Opp'n to Pet. Motion to Purge and Abate at 9. According to the United States, Eulich's "long, drawn out delay indicates his need of an incentive to obtain the documents" and that without the fine, "Eulich's long history of stalling will continue." Gov't Closing Brief at 8-9.

**Memorandum Opinion and Order – Page 7**

The court rejects Petitioner's argument that its September 14, 2004 order set a compliance deadline of October 1, 2004. As already detailed above, the September 14 order was essentially an adoption by the court of the agreed-upon terms of the Joint Response (*see* Joint Response at 2), filed by the parties in response to an inquiry by the court concerning whether the parties could reach an agreement regarding tolling certain provisions of the court's August 18, 2004 Order of Contempt. Following its receipt of the Joint Response, the court ordered:

> 1.  That if Mr. Eulich delivers the documents as represented by his counsel on or before October 1, 2004, then the actual payment of any fine is suspended pending a status report by the Parties to be filed on or before October 8, 2004;
>
> * * *
>
> 3.  That in the event Mr. Eulich fails to deliver the documents which he received from CIBC and Mr. Rounce by October 1, 2004 . . . Mr. Eulich is ordered to post a bond or deposit cash in the registry of the Court in the amount of $150,000 by 5:00 p.m. on October 4, 2004, pending further order of the Court; and
>
> 4.  The actual payment of any other fine is suspended pending further Order of the Court.

Order at 1. While the court understands zealous advocacy and legal legerdemain, Petitioner's argument rests on a plain misreading of the September 14 order. Contrary to the position argued by Eulich, nothing about the August 18, 2004 Order of Contempt was interim in nature. The court did not set a future performance date for Eulich, but held Eulich in civil contempt and ordered him fined $5000 per day, until he produced the CIBC documents. Moreover, suspending imposition of a fine is not synonymous with abating a fine. The primary meaning of "suspend" is to "interrupt," "postpone," or "defer." Black's Law Dictionary 1487 (8th ed. 2004). By contrast, the primary meaning of "abate" is to "elimat[e]" or "nullify[]." *Id.* at 3. Nowhere in the September 14 Order

**Memorandum Opinion and Order – Page 8**

did the court state that the fine would be eliminated or nullified if Petitioner produced the documents by October 1, 2004. Instead, at the parties' joint request, the court's order provided that, in the event Eulich produced the documents before October 1, 2004 (as he had promised the United States following the court's Order of Contempt), he would not have to post a bond or pay a deposit into the registry of the court in the amount of $150,000. Posting a bond and paying a deposit are distinct from paying a contempt fine of $5000 per day imposed by the court. In short, Petitioner is now "reading into" the order that which was never contemplated by the court (or by the parties, as made clear by perusing the Joint Response).

Civil contempt proceedings are remedial in nature, and for the purpose of coercing compliance with the orders of the court and compensating complainant's for losses sustained by noncompliance. *See American Airlines, Inc. v. Allied Pilot's Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000). In this case, the August 18, 2004 Judgment (read in tandem with the Memorandum Opinion and Order of the same date) makes abundantly clear that imposition of the $5000 per diem fine is to coerce compliance with the court's enforcement order. *See* Judgment ("It is therefore ORDERED, ADJUDGED, and DECREED that Petitioner John F. Eulich is hereby **held** in civil contempt for failure to comply with the court's Order of Enforcement dated September 17, 2002. It is further ORDERED, ADJUDGED, and DECREED that a fine in the amount of **$5,000 per day** from entry of this judgment is imposed against John F. Eulich.") (original emphasis). Nowhere does the court state that the $5000 per day fine is conditioned on continued noncompliance with its orders. Eulich's long-standing recalcitrance in this case necessitated such a fine. Even a cursory review of the United States' nearly five-year struggle to obtain the documents, and Petitioner's foot-dragging, reveals the need for the $5000 per day fine. The summonses and FDRs in this case were

issued in 1999. On September 17, 2002, this court issued its enforcement order, wherein the court accepted the magistrate judge's recommendation and enforced the summonses and FDRs. Rather than comply, Eulich then appealed, and on August 27, 2003, the Fifth Circuit Court of Appeals affirmed the enforcement order as to Eulich and refused to "disturb the finding that John Eulich has control of the [requested] documents." *Eulich*, 2003 WL 22018884 at *1. Still Eulich did not produce the documents, but instead continued to disregard the court's authority.

By imposing the fine, the court sought to provide Eulich with the type of incentive to spur him to action. The court finds most telling that Eulich, following the August 18, 2004 Order of Contempt, was now somehow able to provide the documents from CIBC that he originally claimed he was unable to produce. That the documents were produced is proof that, with some effort, the documents were obtainable. Specifically, in his August 16, 1999 Petition to Quash Formal Document Requests, Petitioner asserted that he did not have control or possession of the requested documents, which included the documents relating to the Mona Elizabeth Mallion Settlement Trust No. 16. The Fifth Circuit rejected this assertion. After nearly five-years of recalcitrance, only following the Order of Contempt, and imposition of the $5000 per day fine, did Eulich produce the documents.

Moreover, even after the August 18, 2004 Order of Contempt, it took Petitioner **forty-three days** to provide the United States with the four boxes of documents from the Trust. Even taking into account testimony at the August 23, 2005 hearing regarding delays that were not in Petitioner's control, the court has not been provided an explanation by him for the **twenty-seven days** between its August 18, 2004 Order of Contempt and Eulich's September 30, 2004 production of the four boxes. Specifically, Petitioner has presented evidence that his trip to the Bahamas was delayed

**Memorandum Opinion and Order – Page 10**

approximately six days due to hurricanes, that Scott Dye spent approximately three days copying the documents in the Bahamas, and that approximately a week was spent by Petitioner's attorneys conducting a privilege review. Petitioner provides no explanation, however, for the remaining twenty-seven days between the court's Order of Contempt and his production. This will not do.

The time for compliance is long past. That is why the court held Petitioner in contempt of its September 2002 enforcement order. Contrary to Eulich's arguments, his production of four boxes on September 30, 2004 did not cure his previous lack of production. Indeed, it is axiomatic that Eulich had a duty to produce the documents before they were due. Petitioner should have complied forthwith. His unwillingness to comply for several years and concomitant disregard of the court's authority until the court's imposition of the daily fine evidence the need for a fine in this case. In short, given the totality of the circumstances, the court concludes that the fine imposed served as the only catalyst to prod Eulich to comply with the court's September 17, 2002 enforcement order.

Accordingly, the court **denies** Petitioner's motion to abate the fine. The court, however, takes into account evidence presented by Petitioner that the production was delayed by approximately six days due to hurricanes in the Bahamas, that Scott Dye spent approximately three days copying the documents in the Bahamas, and that approximately a week was spent by Petitioner's attorneys conducting a privilege review. Accordingly, although the United States is correct that forty-three days passed between entry of the court's Judgment (August 18, 2004) and Eulich's production of the documents (September 30, 2004), taking into account the adverse weather conditions, the copying and the privilege review, the court will calculate the fine based on the

**Memorandum Opinion and Order – Page 11**

twenty-seven days that Eulich was not in substantial compliance with the August 18, 2004 Order of

Contempt, rather than the full forty-three days. Accordingly, the court determines that the appropriate amount of the fine to be assessed against Eulich is **135,000** ($5000 per day for 27 days).

### C.   Motion for Declaration Purging Petitioner of Contempt

In addition to moving for an abatement of the fine, Eulich contends that the court should purge him of contempt because the evidence shows that he has complied with the court's order of contempt by seriously and diligently using all reasonable efforts to obtain the documents within the physical possession of CIBC, and to turn them over to the IRS. *See* Pet. Mot. at 6; *see also* Pet. Closing Brief at 8. In opposition, the United States argues that the court should not purge Petitioner of contempt since Eulich has not "in good faith made all reasonable efforts" to produce documents in the possession of CIBC. Gov't Closing Brief at 5.[6]

Contending that Eulich has not purged himself of contempt, the United States argues that the CIBC production is "spotty," and "reflect[s] a lack of an audit trail a sophisticated investor like Eulich would need in order to be assured his financial investment[s] are protected." Gov't Closing Brief at 6-7; *see also* Jan. 13, 2005 Declaration of James S. Vivian ¶ 11 ("In my opinion there must be other documents in existence which would normally be associated with such financial activities."). At the August 23, 2005 hearing, the Untied States presented testimony of James S. Vivian, IRS international examiner. Vivian testified that, given his extensive experience as an

---

[6]At the August 23, 2005 hearing, over the objection of counsel for the United States, Mr. Joe Pitzinger, the court limited the scope of the hearing to the facts and circumstances surrounding Eulich's efforts to obtain the documents in CIBC's *physical* possession, determining that so limiting the scope was consistent with the terms of the court's order of contempt, wherein the court accepted that portion of the Magistrate's Report recommending that Petitioner be found in civil contempt for failing to produce the documents in the physical possession of CIBC. *See* Transcript of August 23, 2005 Hearing at 15-21 ("Transcript"). Mr. Pitzinger had argued that the scope of the hearing should include a determination as to whether Eulich complied with the terms of the enforcement order. *Id.* at 12; *see also* United States Opp'n at 6. Although limiting the scope of the inquiry for purposes of determining whether Eulich should be purged of contempt, as the court made clear during the hearing, the court's ruling in no way prevents the Government from taking future action for contempt relating to the enforcement order, assuming good cause exists. *Id.* at 19. Further, the court expresses no opinion at this time regarding whether Eulich has, in fact, complied with the enforcement order.

**Memorandum Opinion and Order – Page 13**

international specialist with the IRS, along with experience in reviewing the records of trusts, he would have expected CIBC to have more documents, including ledgers, journals, trial balances and typical accounting records, all of which would reveal the assets and income of the trust. *See* Hearing Transcript at 112- 188. When asked by Mr. Charles Meadows, counsel for Eulich, whether he had any knowledge of a document in the possession of CIBC that CIBC did not provide to Eulich, which Eulich in turn provided to the Government, Vivian responded, "No, I don't." *Id.* at 127.

The Government retains the burden of proof to show by *clear and convincing* evidence that Eulich has failed to produce sufficient evidence of substantial compliance. *Lyn-Lea Travel Corp.*, 283 F.3d at 291; *Rizzo*, 539 F.2d at 465.[7] After carefully weighing the evidence, the court determines that the Government has failed to make its case that Eulich has not made in good faith all reasonable efforts to obtain and produce the CIBC documents following the order of contempt. Speculation or suggestion by Vivian, or even testimony by a preponderance of the evidence, that other documents ought to exist, without more, is not enough. *See, e.g., Rizzo*, 539 F.2d at 465-66.

In short, having carefully considered the legal briefs filed by the parties, along with associated evidence submitted therewith, the testimony and demeanor of the witnesses at the hearing, including Eulich, Tye, and Vivian, along with argument of counsel and the entirety of the extensive record in this case, the court determines that Eulich, by producing the CIBC documents on September 30, 2004, and thereby ultimately satisfying the court's August 18, 2004 Order of Contempt, albeit belatedly, purged himself of contempt as of September 30, 2004. Accordingly, the

---

[7]"In a civil contempt action the proof of the defendant's contempt must be 'clear and convincing', a higher standard than the 'preponderance of the evidence' standard, common in civil cases, although not so high as 'beyond a reasonable doubt.'" *Rizzo*, 539 F.2d at 465. (Citations omitted); *see also N.L.R.B. v. Blevins Popcorn Co.*, 659 F.2d 1173, 1186 (D.C. Cir. 1981) ("the clear and convincing standard should be employed" at the purgation stage).

**Memorandum Opinion and Order – Page 14**

court **grants** Petitioner's Motion for Declaration Purging Petitioner of Contempt and hereby declares that Petitioner Eulich has purged himself of contempt.[8]

### III.  Conclusion

For the reasons set forth herein, the court **denies in part and grants in part** Petitioner's Motion to Abate Fine and for Declaration Purging Petitioner of Contempt.  With respect to Petitioner's motion to abate fine, the court **denies** the motion as to the twenty-seven days that Eulich was not in substantial compliance with the court's August 18, 2004 Order of Contempt.  The court hereby **assesses** a fine of **$135,000** against Petitioner John F. Eulich for that time period.  Petitioner is hereby **directed** to pay to the United States **$135,000** no later than **February 22, 2006**.  *If this amount is not paid as directed by the court, the court may take such action, which may include additional monetary penalties or incarceration, against Petitioner John F. Eulich that it deems necessary and appropriate to enforce this order.*  With respect to Petitioner's motion for declaration purging him of contempt, the court determines that, by ultimately satisfying the court's August 18, 2004 Order of Contempt, albeit belatedly, John F. Eulich has purged himself of contempt as of September 30, 2004.  Accordingly, the court **declares** that Petitioner John F. Eulich **is hereby purged** of contempt, as found by the court's order of August 18, 2004, for his failure to produce the

---

[8] In further support of his motion to purge, Petitioner submitted affidavits of CIBC and Rounce, to which the United States has objected on evidentiary grounds.  As the court has no need to rely on these affidavits, the court **overrules as moot** the United States' objections.

documents in the physical possession of the trustee of the Mona Elizabeth Mallion Trust Fund No. 16, the Canadian Imperial Bank of Commerce Trust Co., (Bahamas) Ltd.

**It is so ordered** this 23rd day of January, 2006.

_____
Sam A. Lindsay
United States District Judge