IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JOHN F. EULICH**, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. **3:99-CV-1842-L** |
| | § | |
| **UNITED STATES OF AMERICA**, | § | |
| | § | |
| Respondent. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is the United States' Second Motion to Hold Petitioner in Contempt of the Court's September 17, 2002 Order of Enforcement, filed April 3, 2006; and Petitioner's Cross Motion to Dismiss, filed May 12, 2006. After careful consideration of the motions, responses, reply, record and applicable law, the court **denies** United States' Second Motion to Hold Petitioner in Contempt of the Court's September 17, 2002 Order of Enforcement and **grants** Petitioner's Cross Motion to Dismiss.

**I.      Factual and Procedural Background**

The Internal Revenue Service ("IRS") is investigating Petitioner John F. Eulich ("Eulich" or "Petitioner") for the tax years of 1995, 1995 and 1997.  As part of its investigation, the IRS sought documents relating to a Bahamian trust, the Mona Elizabeth Mallion Settlement Trust No. 16 ("MST-16" or "the Trust"), and to various corporations controlled by the Trust.  To that end, on May 18, 1999, and November 15, 1999, the IRS issued Formal Document Requests ("FDRs") on Eulich and Virginia Eulich, his wife, and on or about July 15, 1999,  served an Administrative Summons on the Eulichs.

On August 16, 1999, Eulich and his wife filed this action to quash certain document requests relating to the Trust, and the Government subsequently filed counterclaims seeking to enforce the summonses. On February 9, 2001, the magistrate judge filed a report and recommendation, after having held a hearing, recommending that the summonses be enforced against both Eulich and his wife. On September 17, 2002, this court accepted the magistrate judge's recommendation and enforced the summonses and FDRs (the "enforcement order").[1]

On June 27, 2003, the Government filed a Motion to Hold Petitioner in Contempt of the Court's September 17, 2002 enforcement order. The court referred the motion to the magistrate judge. On April 26, 2004, the magistrate judge issued his report and recommendation ("Magistrate's Report"), recommending that the court hold Eulich in civil contempt of court:

> The evidence presented established by clear and convincing evidence that John Eulich has failed to comply with the court's enforcement order in failing to produce the documents called for in the IRS summons and requests which are in the physical possession of the trustee of the Mona Elizabeth Mallion Trust Fund No. 16, the Canadian Imperial Bank of Commerce Trust Co., (Bahamas) Ltd. And for the reasons stated above John Eulich has failed to demonstrate that he has made all reasonable efforts to comply with the court's order.

Magistrate's Report at 10.[2]  Both parties filed objections to the Magistrate's Report.

_____

[1] The Eulichs appealed, and on August 27, 2003, the Fifth Circuit Court of Appeals affirmed the enforcement order as to Eulich and reversed the enforcement order as to his wife. Specifically, the Fifth Circuit held that Virginia Eulich did not have custody or control of the requested documents, as she was named in the FDRs and summonses only because she was married to Eulich and because community property was used in establishing the Trust. Accordingly, based on the Fifth Circuit's opinion, Virginia Eulich is no longer a party to this action, as she has no obligation or responsibilities associated with the FDRs and summonses. The Fifth Circuit, however, refused to "disturb the finding that John Eulich has control of the [requested] documents." *Eulich v. United States*, 2003 WL 22018884 at *1 (5th Cir. 2003).

[2] The magistrate judge also recommended that the court impose a civil fine in the amount of $1,500 per day from the date of his order until Eulich produces to representative(s) of the IRS the documents of the Trust or causes the same to be made available to such representative(s). Magistrate's Report at 10-11. Finally, the magistrate judge recommended that in the event Eulich files an action or causes to be filed an action by persons or entities with colorable standing to seek disclosure of records maintained by the Canadian Imperial Bank of Commerce and Trust Co. (Bahamas) Ltd. in

By order issued August 18, 2004, the court accepted in part and rejected in part the Magistrate's Report. The court accepted that portion of the Magistrate's Report recommending that Eulich be held in civil contempt of court. The court rejected the remaining portions of the Magistrate's Report, including his recommendations as to the amount of the fine and the tolling of the fine pending the filing of a lawsuit in the Bahamas. Instead, in order to obtain compliance with the enforcement order, the court imposed a per diem civil fine in the amount of $5,000 per day for the first 30 days from the entry date of its order, until Eulich "produces, or causes to be produced, the documents of the Mallion Trust Fund No. 16 to IRS representative(s), or the court orders otherwise." Order of Contempt 6. The court further ordered that if Eulich had not complied by the 31st day, the fine would be increased to $10,000 per day, and that if by the 45th day after entry of its order, Eulich had not complied with the enforcement order, the attorney for the Government shall notify the court of his noncompliance. *Id.* at 12. The court ruled that if it received such notice, it would set the matter for a hearing to determine whether Eulich was in compliance and, if he was not, whether the daily fine should be increased or whether Eulich should be incarcerated to obtain compliance with the enforcement order. *Id.*

On November 5, 2004, Petitioner filed Petitioner's Motion to Abate and Purge. The court denied the motion with respect to Petitioner's request to abate the fine and granted the motion with respect to his request to purge him of contempt.

On April 3, 2006, the Government filed a Second Motion to Hold Petitioner in Contempt of the Court's September 17, 2002 Order of Enforcement. "The motion asks that Eulich be held in

---

a court of the Bahamas, that the civil fine imposed be tolled during the period that such action is pending, provided that certified copies of all process, pleadings, written and minute orders of the Bahamian court are promptly provided to this court. *Id.*

**Memorandum Opinion and Order – Page 3**

contempt for failing to produce documents in his possession or control not only [for] the specifically named entities in the summons and formal documents requests but [also for] entities described in the summons and formal document requests." 2nd Mot. for Contempt 2.  Eulich counters that the formal document requests do not extend to the documents identified in the Government's motion and that he has not violated a definite and specific order with respect to the documents identified in the motion.  In the alternative, Eulich contends that the Government's motion is barred by res judicata, collateral estoppel, and waiver.  Based on the same arguments contained in his response, Eulich also moves to dismiss this action.

## II.   Analysis

### A.   Legal Standard

A movant seeking a civil contempt order must establish, by clear and convincing evidence, "(1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002); *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987) (citations omitted); *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976).  Willfulness is not an element of civil contempt.  *Petroleos Mexicanos*, 826 F.2d at 401.  Once the movant has shown a *prima facie* case, the respondent can defend against it by showing a present inability to comply with the subpoena or order.  *Id.*; *United States v. Rylander,* 460 U.S. 752, 757 (1983).  "While the court is bound by the enforcement order, it will not be blind to evidence that compliance is factually impossible. Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt

action." *Rylander*, 460 U.S. at 757.  "It is settled, however, that in raising this defense, the defendant has a burden of production."  *Id*.

 **B.**  **Analysis**

  **1.**  **Documents Relating to Other Foreign Entities**

 The Government's request to hold Eulich in contempt is based upon his alleged failure to comply with the September 17, 2002 enforcement order.  The enforcement order was based upon the magistrate judge's recommendations with respect to three formal document requests: IE04, IE05, and IE06A.  With respect to IE04, which sought "documents relating to the Mona Elizabeth Mallion Settlement Trust, Funds Nos. 1 through 20," the magistrate judge found that although twenty separate trust funds were established, only one of the funds, MST-16, had business dealings with non-domestic entities and held an ownership interest in those entities.  Feb. 9, 2001 Mag. Report 8 & n.9.  With respect to IE05, which sought "records of accounts maintained by Eulich at specified non-domestic banking institutions," the magistrate judge found that although Eulich "testified at the evidentiary hearing that [he did not] maintain[] such accounts, these attestations should be made when [he] appear[s] pursuant to the FDR . . . ."  *Id.* at 9.  With respect to IE06A, which sought "documents related to *20  non-domestic entities*," the magistrate judge found the following:

> Although it appears that none of the documents called for in this document are presently in the possession of [Eulich], [he] has [not] made any attempt to obtain the enumerated documents from any of the *listed* entities.  The evidence before the court shows that the entities *listed* on IE06A are wholly owned by MST16.

*Id.* at 9 (emphasis added).  Based on these findings, the magistrate judge made the following determination:

> [Eulich] failed to show an inability to obtain access to the documents relating to the MST16 called for under IE04, <u>supra</u>.

> Given MST16's ownership of the entities identified in IE06A,
> [Eulich], directly or indirectly through the means available to
> MST16, the trustee and/or the Advisory Committee, should be able
> to obtain the records of these non-domestic entities.

*Id.* at 9-10.  Therefore, the magistrate judge recommended, in relevant part, that the district court enforce the formal document requests.  Although the Government filed a document that it described as objections, the first sentence of the document states the following: "The United States supports the report and recommendation of the United States Magistrate Judge filed February 9, 2001, and believes it to be correct in all material matters."  Gov't Obj. 1.  The district court concluded that the findings and recommendation of the magistrate judge were correct and accepted them as those of the court.

On September 20, 2005, the Government provided Eulich's attorney with a list of over one hundred foreign entities for which it sought documents.  The Government contends that these are "entities in which Eulich jointly or separately owns a controlling interest or over which he exercises management or decision making control."  Gov't Resp. to Mot. to Dismiss 5.  It now seeks to hold Eulich in contempt "until he turns over the documents relating to these entities plus documents relating to any other entities not named, but which he owns, controls, or manages."  *Id.*  The enforcement order, however, does not reach this far.  Although the Government relies on the "catchall" language in IE06A[3] to support its request, the magistrate judge described  IE06A as seeking "documents related to *20 non-domestic entities*."  Feb. 9, 2001 Mag. Report 9.  The Government did not object to this characterization, and the court accepted it.  Therefore, with respect

---

[3]The "catchall" language in IE06A requests documents for "any and all other foreign entities, regardless of the their domicile, in which taxpayers, jointly or separately, own a controlling interest or over which they exercise management or decision making control."  Mar. 27, 2006 Vivan Decl., Ex. A.

to IE06A, the enforcement order applies only to the twenty non-domestic entities that are listed in the request. Accordingly, the court will not hold Eulich in contempt of the September 17, 2002 enforcement order for his alleged failure to provide documents relating to non-domestic entities that are not listed in IE06A.

### 2.    Documents Relating to Named Entities

With respect to the entities listed in IE06A, the Government believes that Eulich has not produced all relevant documents in his possession or control (including constructive possession or control of Canadian Imperial Bank of Commerce Trust Co., (Bahamas) Ltd. ("CIBC")) relating to Belmont Holdings, Ltd. and Bridgwood Investments, Ltd. Gov't Resp. to Mot. to Dismiss 3.

### a.    Bridgwood Investments, Ltd.

The Government believes that Eulich has not produced all relevant documents in his possession or control relating to Bridgwood Investments, Ltd. In its second motion for contempt, the Government relies solely on the March 27, 2006 declaration of Revenue Agent Jim Vivian ("Vivian") to establish a *prima facie* showing of Eulich's violation of the enforcement order as it relates to this entity. *See* Gov't Mot. 3, ¶6. Because Vivian's declaration neither mentions nor addresses Eulich's alleged violation of the enforcement order with respect to Bridgwood Investments, Ltd., the Government fails to establish a *prima facie* showing of Eulich's violation of the enforcement order with respect to this entity. Therefore, the court will not hold Eulich in contempt of the September 17, 2002 enforcement order for his alleged failure to provide documents relating to Bridgwood Investments, Ltd.

b.      **Belmont Holdings, Ltd.**

Eulich contends that the Government's contempt motion is barred by *res judicata*, collateral

estoppel, and waiver.  The Government counters that its motion is not barred by any of these

theories.  Because the court determines that Eulich's waiver argument is dispositive, it only

considers this argument below.

Eulich contends that the Government waived its right to litigate matters contained in the

second contempt motion because the Government failed to object to the magistrate judge's finding

that Eulich had not produced documents that were in the physical possession of CIBC.

Under federal law, a party waives its right to *de novo* review by the district court of those

portions of the magistrate judge's report and recommendation to which it did not timely object.  *See*

*Cupit v. Whitley*, 28 F.3d 532, 535 n.5 (5th Cir. 1994), *cert. denied*, 513 U.S. 1163 (1995).

In its first motion for contempt, the Government contended that Eulich failed to produce the

charter, bylaws, stock register, meeting minutes, correspondence, banking records, brokerage

records, and evidences of debt for Belmont Holdings, Ltd.  June 25, 2003 Vivian Decl. Ex. K 2.  The

Government also contended that Eulich complied in part with its request for the accounting records

of this entity because he only produced balance sheets for 1995 and 1997.  The broad scope of the

Government's motion, mirrored the broad scope of IE06A, which is the document request in which

Belmont Holdings, Ltd. is listed.  Eulich responded that he had no control over the documents in

CIBC's possession.  In framing the issue before the court, the magistrate judge stated the following:

> Following entry of the District Court's enforcement order on
> September 17, 2002, John Eulich directed Keith Kennedy, the general
> counsel for Eulich's companies and family interests, to conduct a
> review of all records maintained in Dallas to locate any documents
> within the purview of the IRS summonses and its formal document
> requests (FDR's).      Kennedy oversaw the examination of

approximately 2000 boxes of documents and in turn produced relevant documents for inspection by agents of the IRS. Both Mr. and Mrs. Eulich and Keith Kennedy appeared before IRS agents to answer questions with respect to matters within the scope of the document requests, See Petitioner's Hearing Exhibits 19, 20 and 23 (hereinafter referred to as Petitioner's Exhibit ___).

Although Mr. Vivian opined in the course of his testimony that there may still be documents within the United States which are called for in the subject document requests, he conceded an absence of information to support any claim of non-compliance with respect to domestic documents. Mr. Kennedy in turn testified that the only documents which have not been produced are those maintained by the trustee, the Canadian Imperial Bank of Commerce Trust Co. (Bahamas) Ltd (CIBT) and possibly documents in the possession of David Rounce, infra. **Therefore, the issue which is determinative of the merits of the government's motion is whether John Eulich's failure to obtain copies of the documents from CIBCT or from David Rounce called for in the IRS requests, i.e. the IRS administrative summons served on or about July 15, 1999, the FDR to Eulich dated May 18, 1999, and the FDR to Eulich dated November 15, 1999, constitutes a violation of the court's enforcement order.**

Apr. 26, 2004 Mag. Report 2 (emphasis added). The issue framed by the magistrate judge is considerably narrower than the issues upon which the Government's motion for contempt was based. The Government, however, did not object to the scope of the issue that the magistrate judge deemed to be "determinative of the merits of the government's motion." *Id.* It merely objected to the magistrate judge's findings regarding Eulich's contention that he had no control over the documents in CIBC's possession. *See* Gov't Obj. to Apr. 26, 2004 Mag. Report 2-3, 11-13. This finding is separate from the magistrate judge's framing of the issue. Because it failed to file objections to this portion of the magistrate judge's report, the Government waived its right to *de novo* review by the district court. The court accepted the portion of the magistrate judge's report that framed this issue and ultimately held Eulich in contempt. The time to object to this aspect of the magistrate judge's findings and recommendation was ***prior to*** the district court's acceptance of them. Therefore, the

time to take issue with the scope of this portion of the magistrate judge's report, the contempt order accepting it, and the resulting judgment has long passed.

That the court limited the scope of the hearing on the motion to abate to Eulich's efforts to obtain the documents in CIBC's *physical* possession and stated that its ruling did not preclude the Government from taking further action for contempt relating to the enforcement order does not alter the court's analysis. The court conducted the hearing on Eulich's motion to abate on August 23, 2005 – over a year after the court filed its August 18, 2004 contempt order. The time for the Government to object to the scope of the contempt order had already come and gone. The court was correct when it stated that its ruling did not preclude the Government from taking further action for contempt relating to the enforcement order. The Government's ***failure to timely object*** to the issue framed by the magistrate judge and to the court's acceptance of the issue precludes the Government from taking further action for contempt relating to the enforcement order. Accordingly, the Government has waived its right to litigate the remaining matters relating to Belmont Holdings, Ltd., which is the only remaining basis for the second contempt motion.

## III.    Conclusion

For the reasons herein stated, the court **determines** that Eulich is not in contempt of the September 17, 2002 enforcement order for his alleged failure to provide documents relating to non-domestic entities that are not listed in IE06A; Eulich is not in contempt of the September 17, 2002 enforcement order for his alleged failure to provide documents relating to Bridgwood Investments, Ltd.; and the Government has waived its right to litigate the matters relating to Belmont Holdings, Ltd., which is the only remaining basis for the Government's second motion for contempt. Accordingly, the court **denies** United States' Second Motion to Hold Petitioner in Contempt of the

Court's September 17, 2002 Order of Enforcement and **grants** Petitioner's Cross Motion to Dismiss to the extent that it seeks to dismiss any contempt proceedings against Petitioner.

**It is so ordered** this 4th day of September, 2009.

Sam A. Lindsay
United States District Judge